Tom (Fayette T.) Moore, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 18273. Promulgated February 28, 1930.

*W. T. Peake, Esq.*, and *W. C. Sullivan, Esq.*, for the petitioner.
*Eugene Meacham, Esq.*, and *C. E. Lowery, Esq.*, for the respondent.

148

OPINION.

MARQUETTE: With reference to the deficiency asserted by the respondent against the petitioner for the year 1919, no evidence was offered. The presumption that the deficiency was correctly asserted places upon the petitioner the burden of overcoming that presumption by competent evidence. That burden has not been sustained in this instance, and we therefore approve the respondent's determination as to the year 1919.

The same is true as to the deficiency asserted for the year 1921, with this exception: At the hearing the pleadings were so amended as to raise an issue respecting the petitioner's right to a deduction, from gross income, of $4,800 paid out in 1919 on a project which was abandoned in 1921. This amount was paid to an architect for his services in preparing plans for a new theatre which the petitioner then intended to build. The building was not erected and in 1921 the petitioner abandoned the project. Section 214 (a) (4) of the Revenue Act of 1921 provides that in computing net income there shall be allowed as deductions:

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business.

The amount thus expended for architect's services was an investment in a business enterprise, and became lost to the petitioner

when that enterprise was abandoned. This Board has held that amounts so invested are allowable as deductions for losses in the year in which the enterprise is finally abandoned. See, *C. U. Connellee*, 4 B. T. A. 359; *Kilby Car & Foundry Co.*, 4 B. T. A. 1294. In our opinion the petitioner should be allowed the deduction of $4,800 for loss sustained in 1921.

For the year 1920 a like condition appears. The petitioner expended $4,000 for architect's services in preparing plans for a new theatre which was not built, and the entire project was abandoned during the same year. The amount so expended should be allowed to the petitioner as a deduction for loss sustained in 1920.

Three more questions are presented respecting the petitioner's income for 1920. The first is whether the total amount of $150,000 paid to the petitioner for 1,350 shares of First National Pictures stock should be included in petitioner's gross income. The petitioner contends that, by reason of the decree of the Supreme Court of the District of Columbia as set forth in our findings of fact, only $75,000 of the sale price of the First National Pictures stock is chargeable to him; and he further contends that by reason of his assignment of interest in and to 85 per cent of the same corporate stock he can be taxed only on 15 per cent of such $75,000.

We are of opinion that the petitioner's contention on this point should be sustained. It appears from the pleadings in the case above mentioned that the plaintiffs, minority stockholders of Moore's Theatres Corporation, claimed that the defendant, Fayette T. Moore, the petitioner herein, had wrongfully secured from the Moore's Theatres Corporation the shares of stock in question and had converted to his own use money of the corporation; that he had sold said shares of stock for $150,000 and from such money, and the money of the corporation he had wrongfully converted to his own use, had expended $75,000 in purchasing a note and deed of trust that had been executed by Moore's Theatres Corporation to one Lanning, and that he held said note and deed of trust for the benefit of the corporation. The plaintiffs prayed that the defendant Fayette T. Moore be enjoined from foreclosing, or causing to be foreclosed, the said deed of trust securing said note and for an accounting between Fayette T. Moore and Moore's Theatres Corporation. The court decree recites that during the pendency of the case the defendant Fayette T. Moore canceled said note and deed of trust and the court approved "the division made by the defendant Fayette T. Moore of the One Hundred and Fifty Thousand ($150,000) Dollars received from the First National Exhibitor Circuit, Inc.," and ordered that entries be made on the corporation's books to show that the amount of $75,000 had been paid to it as of November 9, 1920,

and that said amount had been used for the payment of the trust note. The court also gave judgment against the defendant Fayette T. Moore for the additional amount of $12,346.15. We are constrained to hold that the effect of said judgment was that as between Fayette T. Moore and Moore's Theatres Corporation, Moore was entitled to only one-half of the proceeds of the sale of the stock mentioned, and that he should be required to account only for that amount.

With reference to the effect to be given to the "Assignment of Interest " in and to 85 per cent of the First National Pictures stock owned by the petitioner, we are of opinion that the petitioner intended to convey, and that by the instrument did convey, to his wife, his mother, and his sister, 85 per cent of his interest in and to the stock mentioned herein, reserving to himself, however, the right to act as the agent for his wife, his mother and his sister in the management or subsequent sale of the stock. We are of opinion that the instrument effected the result for which it was intended and that the petitioner thereby divested himself of ownership of 85 per cent of his interest in the stock in question, and that upon the subsequent sale of the stock only 15 per cent of the proceeds, that is, 15 per cent of $75,000, belonged to him.

The next question is whether the petitioner sustained a loss amounting to $162,500 in 1920. In November, 1917, this petitioner executed an agreement whereby he was to transfer to the Metropolitan Theatres Corporation certain real estate, and certain corporate stocks in three separate companies. In return he was to receive all the capital stock of the Metropolitan Corporation, $137,500 in cash, and the Metropolitan Corporation's promissory note for an amount not specified in dollars but which other evidence shows to have been $162,500. The corporate stocks which the petitioner thus agreed to sell were worth $300,000 and had cost him that amount. The agreement was signed and sealed both by the petitioner and the other parties thereto. The petitioner transferred the land and part of the corporate stock, and received $137,500 in cash and all the capital stock of the Metropolitan Theatres Corporation. He did not receive the latter company's note for $162,500 and for that reason he did not transfer some of the corporate stock called for by the agreement. He has never received either the note or the money which it was to represent. It is now claimed that the petitioner's right to collect the $162,500 became barred by the statute of limitations in 1920 and that he therefore suffered a deductible loss in that year.

The instrument relied upon by the petitioner was executed in the District of Columbia and was there to be carried out. Section 1265 of the Code of Laws of the District of Columbia provides, among

other things, that: "No action shall be brought * * * on any * * * bond or single bill, covenant, or other instrument under seal after twelve years after the accruing of the cause of action thereon." It would seem apparent, therefore, that the petitioner's right of action against the Metropolitan Corporation did not become barred in 1920, three years after the earliest date when such right of action could possibly have accrued.

In addition to that, it appears that in 1919 the Metropolitan Corporation returned to this petitioner the corporate stocks which he had transferred to it in November, 1917. The evidence gives no indication that the petitioner returned to the Metropolitan Corporation any part of the $137,500 which it had paid him in 1917 as part consideration for the corporate stocks. The petitioner thus possessed, in 1919, all the corporate stocks which he testifies were worth $300,000 and he also had $137,500 received in partial payment for those stocks. We fail to see wherein he suffered any loss in 1920; and his claim for allowance of a deduction of $162,500 from his gross income for that year on account of such alleged loss should be denied.

As to the final question for our consideration, it appears that in 1920 the business, leases, furniture, etc., of the Strand Theatre were sold by the Orpheum Theatre Co. for $54,500, and the petitioner also transferred to the buyer all the Orpheum Co.'s stock. It also appears that he had in prior years advanced monies in behalf of the Orpheum Theatre Co. in the aggregate amount of $48,000. The petitioner testified at the hearing that of this total only $5,700 had been repaid to him, leaving $42,300 still unpaid at the time he sold his stock in the company. He contends that he is entitled to deduct this $42,300 from the amount he received, $54,500, and that he is properly taxable only upon the difference, amounting to $12,200. The respondent has determined that the entire amount of $54,500 should be taxed as profit. The cost of the stock, to the petitioner, is not shown. Neither is there any evidence as to the cost of the furnishings, etc., of the Strand Theatre.

The evidence respecting a debt due the petitioner from the Orpheum Theatre Co. consists entirely of statements made by the petitioner himself, and those statements are conflicting. In 1920, at or about the time of the sale, the petitioner, as president of the Orpheum Co., made a written guaranty that "there are no debts, claims, liens, or other incumbrances, against the property sold," and that the Orpheum Co. had the right to convey the property sold. At the hearing of this proceeding he testified that when the property was sold in 1920 the company owed him $42,300. The petitioner did not ask any deduction from his gross income on account of this

alleged debt in his tax return for 1920. In our opinion the evidence produced is not sufficient to overcome the determination of the respondent that the entire amount of $54,500 should be treated as profit.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH, STERNHAGEN, VAN FOSSAN, and BLACK dissent.